UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------x

CHRISTOPHER J. VAUGHAN,

                Plaintiff,                **MEMORANDUM & ORDER**
                                                19-CV-06421(EK)
           -against-

KIOLO KIJAKAZI, ACTING COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION,[1]

                Defendant.

--------------------------------------x

ERIC KOMITEE, United States District Judge:

        Plaintiff seeks judicial review of the Commissioner of

the Social Security Administration's decision to deny, in part,

his claims for disability insurance benefits.  Before the Court

are the parties' cross-motions for judgment on the

pleadings.  For the following reasons, the Court grants the

Commissioner's motion and denies Plaintiff's cross-motion.

**I.   Background**

        Plaintiff applied for disability insurance benefits on

August 20, 2016.  Administrative Transcript ("Tr.") 15, ECF No.

16.  He claimed disability beginning June 3, 2015 due to L5-S1

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on
July 9, 2021.  Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Kilolo Kijakazi is substituted for Andrew Saul, former
Commissioner of Social Security, as the Defendant in this suit.  *See* 42
U.S.C. § 405(g) ("Any action instituted in accordance with this subsection
shall survive notwithstanding any change in the person occupying the office
of Commissioner of Social Security or any vacancy in such office.").

lumbar herniation and C5-C6 cervical herniation; he underwent
cervical and lumbar surgeries in 2016.  Tr. 200.  His
application was initially denied.  After requesting a hearing,
Plaintiff appeared before an administrative law judge ("ALJ") on
June 14, 2018.  Tr. 32.  The ALJ found that Plaintiff was
disabled from June 2, 2015 to April 21, 2017, but that his
condition improved since April 22, 2017, after which he was no
longer disabled.  Tr. 22-26.  The Appeals Council denied
Plaintiff's request for review of the ALJ's decision, rendering
it final.  Tr. 1-6.  This appeal followed.

## II.  The ALJ Decision

An ALJ must follow a five-step inquiry for evaluating
disability claims. First, the ALJ determines whether the
claimant is engaged in substantial gainful activity.  20 C.F.R.
§ 404.1520(b).  If not, the ALJ evaluates whether the claimant has
a "severe impairment" — that is, an impairment or combination of
impairments that significantly limits the applicant's ability to
do basic work activities.  20 C.F.R. § 404.1520(c).  If there is a
severe impairment, the ALJ must determine if it meets or equals
one of the impairments listed in Appendix 1 of the regulations
(the "Listed Impairments").  20 C.F.R. § 404.1520(d); 20 C.F.R.
Part 404, Subpart P, Appendix 1.  If so, the ALJ will deem the
applicant disabled.  20 C.F.R. § 404.1520(a)(4)(iii).

Here, the Plaintiff had not engaged in substantial gainful activity after June 2, 2015, and the ALJ found the following severe impairments: obesity, small protrusion at L4-5, L5-Sl herniation, grade 1 anterolisthesis of L5-Sl, status post lumbar laminectomy, and status post 5-6 anterior cervical discectomy with decompression.  Tr. 18-19.  None of those impairments, however, rose to the level of a Listed Impairment. Tr. 18.

Before proceeding to step four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which is the most a claimant can still do in a work setting despite physical and mental limitations. 20 C.F.R. § 404.1545(a)(1).  In this case, the ALJ determined that Plaintiff had the RFC to perform "sedentary work" with limitations, including that he "would require frequent unscheduled breaks due to his pain."  Tr. 20.

At step four, the ALJ considers whether, in light of the claimant's RFC, the claimant could perform "past relevant work." 20 C.F.R. § 404.1520(f). If not, at step five, the ALJ evaluates whether the claimant can perform jobs existing in significant numbers in the national economy.  *Id*. § 404.1520(g). The ALJ here found that from June 2, 2015 through April 21, 2017, the claimant was unable to perform any past relevant work and there were no jobs that existed in significant numbers in

the national economy the Plaintiff could have performed.  Tr. 22.

This changed on April 22, 2017, however, when Plaintiff "medically improved."  Tr. 23.  "Medical improvement is any decrease in the medical severity of impairment(s) present at the time of" the most recent disability finding, "and is determined by a comparison of prior and current medical evidence which must show that there have been changes (improvement) in the symptoms, signs or laboratory findings associated with that impairment(s)."  20 C.F.R. § 404.1594(c)(1).  For medical improvement to relate to a claimant's ability to do work, it must show the claimant's functional capacity to perform basic work activities has increased.  *Id*. § 404.1594(c)(2)-(3).

The ALJ determined that Plaintiff's RFC increased on April 22, 2017 because, among other things, (i) his last physical therapy treatment was on April 21, 2017; (ii) he had completed a twelve-week, in-person computer course; and (ii) he drove for Uber.  Tr. 24.  Plaintiff continued to have only the residual capacity for "sedentary work," but the ALJ eliminated one limitation previously imposed — he would no longer require frequent unscheduled breaks due to this pain.  *Id*.  The ALJ determined that, in light of the revised RFC, Plaintiff still could not perform past relevant work, but he could perform other jobs that existed in significant numbers in the national

economy, such as "order clerk," "charge clerk," and "call out operator."  Tr. 25-26.  On that basis, the ALJ determined that Plaintiff was not entitled to social security benefits after April 22, 2017.

### III. Standard of Review

A federal district court has jurisdiction to review the final judgment of the Commissioner denying an application for Social Security disability benefits. 42 U.S.C. § 405(g). The review is limited to two questions: whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008). "[I]f supported by substantial evidence," the Commissioner's factual findings "shall be conclusive." 42 U.S.C. § 405(g).

### IV.  Discussion

Plaintiff seeks review on two grounds.  He claims the ALJ erred in finding medical improvement, and that the ALJ did not fully develop the record.

## A. Medical Improvement

Plaintiff claims that the ALJ's "medical improvement" finding is not supported by substantial evidence.  He argues that the Commissioner did not "accord[] proper weight" to Plaintiff's treating physicians in formulating his RFC as of April 22, 2017.  Plaintiff asserts this argument in one sentence in his brief.  He is likely referring to the ALJ's having given only "some weight" to treating doctors Nickhil Gupta, a pain-management physician, and Richard Amato, a chiropractor.  Both doctors opined in 2018 — after the identified improvement — that Plaintiff could sit for only one hour and stand or walk only for up to two hours.  Tr. 801, 856.

Under the treating physician doctrine, an ALJ must give a treating physician's opinion "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record."  20 C.F.R. § 416.927(c)(2).  An ALJ may discount a treating physician's opinion, however, when it is conclusory, the physician fails to provide objective medical evidence to support the opinion, or the opinion is inconsistent with the record. *E.g.*, P*ortal v. Saul*, No. 17-CV-5503, 2019 WL 4575391, at *3 (E.D.N.Y. Sept. 20, 2019) (citing 20 C.F.R. § 404.1527(c)).

The opinions of Amato and Gupta are inconsistent with substantial non-medical and medical evidence in the record. With respect to non-medical evidence, the ALJ found that Plaintiff's testimony regarding his short-term Uber job and twelve-week computer course (for forty-hours per week) indicated that he could sit for more than just one hour a day.  Tr. 24. Plaintiff argues that the ALJ erred in considering these activities as evidence of improvement.  Plaintiff claims the ALJ misconstrued, or ignored, his testimony that he was given "special accommodations" at the computer course, such as sitting and standing "at will," and that, when he drove for Uber, he had to "pull off to the side of the road" due to "back spasms" and held that job only for approximately two months.

"The law is clear that the ALJ may consider . . . a claimant's purported activities of daily living for the purposes of a credibility determination."  *Coger v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 427, 436 (W.D.N.Y. 2018) (cleaned up).  The Social Security regulations identify "daily activities" as a factor the ALJ should consider in evaluating the intensity and persistence of a claimant's symptoms.  *Id.* (citing 20 C.F.R. § 416.929(c)(3)(i)).  In addition, the ALJ did note in his decision Plaintiff's difficulties driving.  The ALJ stated that Plaintiff stopped driving for Uber "due to his back impairment." Tr. 24.  As to Plaintiff's computer course, the ALJ's decision

did not mention the accommodations that Plaintiff said he was given there.  It is, however, up to the ALJ, not the district court judge, to "take a plaintiff's activities of daily living into account in making a credibility determination," such as whether the alleged accommodations conflicted with his ability to complete the course.  *Pollino v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 428, 440 (W.D.N.Y. 2019).

There is also, as the ALJ found, medical evidence in the record indicating improvement.  Plaintiff discontinued physical therapy after April 21, 2017.  Tr. 24.  There was otherwise "little ongoing treatment for his back and neck pain" after April 21, except for pain management through medication. *Id.*  In March 2017, he told treating physician Michael Morgenstern, a neurologist, that he was "able to walk almost a mile without pain," while "prior to this" he was only able to walk "about 1.5 blocks."  Tr. 830.  And in June 2018, Petitioner reported to Dr. Morgenstern "substantial benefits to pain, sleep and function from medical marijuana."  Tr. 829.

There is thus substantial evidence in the record — certainly more than a mere scintilla — that supports the ALJ's finding of medical improvement.

## B. Development of the Record

Plaintiff argues that the ALJ "did not develop a full and fair record that adduced substantial evidence that the

claimant could perform . . . sedentary work activity" after
April 22, 2017.

"[A]n ALJ, unlike a judge in a trial, must on behalf
of all claimants . . . affirmatively develop the record in light
of the essentially non-adversarial nature of a benefits
proceeding." *Moran*, 569 F.3d at 112. "It is the ALJ's duty to
investigate and develop the facts and develop the arguments both
for and against the granting of benefits." *Id*. This duty is
not, however, unlimited. "[W]here there are no obvious gaps in
the administrative record, and where the ALJ already possesses
'a complete medical history,' the ALJ is under no obligation to
seek additional information in advance of rejecting a benefits
claim." *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

Plaintiff points to no specific item of evidence
missing from the record, and the Court sees no obvious gap.
*E.g.*, *Edwards v. Astrue*, 07-CV-898, 2010 WL 3701776, at *7 n.6
(N.D.N.Y. Sept. 16, 2010) ("Plaintiff presents a cursory
argument regarding the ALJ's duty to develop the record which
the Court rejects."). The medical record amassed nearly 1,300
pages in total. *See e.g.*, *Micheli v. Astrue*, 501 F. App'x 26,
30 (2d Cir. 2012) (summary order) ("Here, the ALJ properly
determined that he could render a decision based on the 500-page
record already before him."). The ALJ solicited treatment notes
and source statements from all of Plaintiff's identified medical

sources.  *E.g.*, *Ortiz v. Comm'r of Soc. Sec.*, 309 F. Supp. 3d 189, 202 (S.D.N.Y. 2018) (ALJ developed the record where it contained treatment notes from all of plaintiff's treating sources).  He also ordered an updated consultative examination in July 2018 — to supplement the one conducted in June 2016. There is thus no indication that the ALJ failed to develop the record.

## V.    Conclusion

For the reasons set forth above, the Court grants Commissioner's motion for judgment on the pleadings and denies the Plaintiff's cross-motion.  The Clerk of Court is respectfully requested to enter judgment and close this case.


SO ORDERED.

_/s Eric Komitee_____
ERIC KOMITEE
United States District Judge


Dated:    September 29, 2021
          Brooklyn, New York

10